TRI-STATE AUTO AUCTION, Inc., Appellant v. OSTROOT, Respondent

(78 N.W.2d 468)

(File No. 9573. Opinion filed September 21, 1956)

**Roy E. Willy,** Sioux Falls, for Plaintiff and Appellant.

**Phil Saunders,** Atty. Gen., **W. O. Knight,** Asst. Atty. Gen., Pierre, for Defendant and Respondent.

SMITH, J.  In this action, brought under SDC 37.01 the complaint of the plaintiff and the answer of the defendant pray for a declaratory judgment interpreting SDC Supp. 44.0211, and SDC Supp. 44.07.

The plaintiff maintains a permanent place of business at Valley Springs, Minnehaha County, where it auctions used motor vehicles, owned by dealers, to other dealers. Such used vehicles as are consigned to plaintiff for sale are the property of dealers located throughout several states, and are sold to other dealers operating businesses in those states.  The purchases at such sales are made only by licensed dealers for resale.  No sales are made to the public or for use.  Plaintiff's literature is circulated among some 1,250 dealers.  As a result some 40 to 70 vehicles are consigned to plaintiff each week, and 50 to 70 per cent of such vehicles are sold. Those which are unsold are eventually returned to their owners.

The Secretary of State is of the view that in order to carry on the described business plaintiff must be licensed as a dealer under SDC Supp. 44.0211 and further that the plaintiff or his consignors must comply with the provisions of SDC Supp. 44.07.  Because plaintiff had failed to comply with all of the provisions of these statutes, the Secretary of State revoked a dealer's license theretofore issued.  Cf. Tri-State Auto Auction, Inc., v. Ostroot, 76 S.D. 69, 72 N.W.2d 427.

The plaintiff has maintained and does steadfastly maintain that the cited statutes were enacted for the purpose of regulating sales at retail to the public, and are without application to the business of conducting an auction of used cars for dealers to dealers.

To resolve this controversy this action was instituted. The facts are not in dispute. Judgment, sustaining the view of the Secretary of State, was entered on the pleadings, and plaintiff has appealed.

The first sentence of SDC Supp. 44.0211 reads as follows: "No person, co-partnership, or corporation, shall engage in the business, either exclusively or in addition to any other occupation, of selling or manufacturing motor vehicles, new or used, or shall offer to sell, solicit or advertise the sale of motor vehicles, new or used, without first having acquired a license therefor as hereinafter provided." Plaintiff recognizes that if the legislative intention is conveyed by the literal meaning of this sentence, it must be licensed as a dealer in order to carry on its described business. However, it is plaintiff's contention that when the sentence is placed in context as a part of the chapter dealing with certificates of title of motor vehicles, and is read in the light of the obvious legislative purpose of protecting those who purchase motor vehicles for use, it is reasonable to conclude that no more was intended than to require a license to engage in the business of selling motor vehicles to the public for use, and hence that a license is not required to conduct a business of auctioning used motor vehicles for dealers to dealers.

In argument it is first pointed out that in a statutory sense, SDC Supp. 44.0201(6) as well as according to common usage a "dealer" is one who buys to sell again, and in fact plaintiff is not such a dealer but an agent who acts between dealers. Our attention is then directed to the fact that SDC Supp. 44.0211 makes two express references to sales at retail. The assumption is then indulged that the legislative purpose in enacting the chapter dealing with certificates of title to motor vehicles, which includes SDC Supp. 44.0211, is to afford protection to those who purchase motor vehicles for use. From this background plaintiff arrives at the conclusion that the statutes fail to reveal an intention to regulate its business.

It is manifest that the chapter and section under consideration comprehend the regulation of retail sales of motor vehicles, and the protection of the purchasers of such

vehicles for use. It seems equally manifest to us that the legislature had more in mind. By the provisions of a companion act, SDC 44.01, it has required that every motor vehicle used on the highways of our state be registered, and that it display the number under which it is registered. By the act we are considering it has provided for a public record of and a certificate of title for every motor vehicle within our state. Further it has said that the business of selling motor vehicles shall be carried on by licensed dealers, and that such dealers must operate from permanent establishments. By SDC Supp. 44.0211 it has provided also that "Every dealer or manufacturer licensed under the provisions of this section, shall keep a book or record, in such form as may be prescribed or approved by the Secretary of State, in which he shall keep a record of the purchase, **sale** or **exchange,** or **receipt for the purpose of sale,** of any motor vehicle, a description of such vehicle, together with the name and address of the **seller,** of the purchaser, and of the alleged owner, or other person from whom such vehicle was purchased or **received,** or to whom it was sold or delivered, as the case may be." These measures reveal a purpose, among others, to aid the police in their constant war against those who seek to profit from converting and stealing these mobile units of property by providing officers with a ready means of identifying and tracing such units, and by so regulating the business of selling the same, as to render the traffic in stolen vehicles both difficult and hazardous. With such a legislative purpose in mind we can conceive of no reason which would induce a lawmaking body to exempt from all regulation a public market where dealers from far and near can dispose of motor vehicles among themselves. Although plaintiff acts as an auctioneer, it is in fact operating a business where it sells motor vehicles. The legislature has said that whoever is so engaged shall be licensed as a dealer, and we deem it reasonable to believe it meant what it said.

We turn to SDC Supp. 44.07. By the first section of that chapter it is provided: "Every dealer in used, or second-hand motor vehicles who is a nonresident of this state, or who does not have a permanent place of business in this state, and every person, firm or corporation, which brings

any used, or secondhand motor vehicles into this state for the purpose of sale or resale, except as a trade-in on a new motor vehicle or another used motor vehicle shall within ten days from the date of entry of said motor vehicle into the limits of this state, register such motor vehicle with the Secretary of State on a form to be provided by him, and shall, before said used or secondhand car is sold or offered for sale, execute a bond with a corporate surety which has been authorized to do business in this state, as surety thereon, payable to the Secretary of State for the use and benefit of any purchaser and conditioned to pay all loss, damage and expenses that may be occasioned by reason of the failure of the title of such vehicle or by reason of any fraudulent misrepresentation or breaches of warranty as to freedom from liens, of the motor vehicle being sold. The said bond shall terminate or mature in not less than one year from the date that it is filed, shall be in the full amount of the sale price of such motor vehicle, but in no event to exceed the sum of one thousand dollars, and shall be filed with the Secretary of State by the vendor. The vendor shall pay to the Secretary of State a fee of one dollar for the registration of each said motor vehicle and a further fee of one dollar for each bond so filed, which sums shall be paid into the treasury to the credit of the state motor vehicle fund. Such vendor may in lieu of a bond for each such used car so sold, execute and file with the Secretary of State a surety bond with a corporate surety in the sum of three thousand dollars covering all sales of such used cars for the period of one year, such bond to be payable to the Secretary of State for the use and benefit of the purchaser and his vendees and conditioned the same as required herein for bonds on the sale of each used car." SDC Supp. 44.0701.

By the last section of said chapter it is in part provided, "The term 'dealer' and 'vendor' herein used shall be construed to include every individual, partnership, corporation or trust, whose business in whole or in part is that of selling new or used motor vehicles, and shall likewise be construed to include every **agent,** representative, or **consignee** of any such dealer as defined above, except that no agent, representative or consignee of such dealer or vendor

shall be required to make and file said bond as herein provided for, if such dealer or vendor for whom such agent, representative or consignee acts has complied in each instance with the provisions of this chapter." SDC Supp. 44.0704.

The legislature has said that **"every"** person, firm or corporation which brings used motor vehicles into this state for the purpose of sale or resale shall register the same with the Secretary of State within ten days from the date of entry of the motor vehicle, and shall execute and file the described bond for the benefit of **"any"** purchaser before such vehicle is sold or offered for sale. SDC Supp. 44.0701 supra. This is an express statement of a purpose to regulate the entire business of moving secondhand motor vehicles into this state for the purpose of sale or resale. Obviously this statute was enacted not only to afford protection to every purchaser of such a used vehicle, but with the purpose of discouraging a constant fraudulent commerce in stolen and mortgaged vehicles. For the benefit of dealers, the statute makes a single narrow exception, viz., of those vehicles brought in for exchange for a new or used vehicle. To yield to the advocacy of counsel would be to expand that execption and to read the act as though it provided, "except secondhand motor vehicles brought into the state for the purpose of sale or exchange to dealers." We discover nothing in the legislative purposes, or in the words it has employed which warrants such an interpretation. Therefore, we hold that those engaged in the business of selling used motor vehicles to dealers are within the contemplation of SDC Supp. 44.07.

■ As an auctioneer conducting a business within the state to which these dealers from several states bring or consign these used vehicles for sale, plaintiff, in our opinion, is such an agent of those dealers as is comprehended by SDC 44.0704, supra. Cf. 7 C.J.S., Auctions and Auctioneers, § 6 a, p. 1247.

■ It was suggested at bar that SDC 44.07 places a discriminatory and unreasonable burden on interstate commerce, and our attention was directed to Jesse M. Chase Casper Co. v. Fugate, D.C., 128 F. Supp. 244. Similar stat-

utes have been held invalid for that reason. Park McLain, Inc., v. Hoey, D.C., 19 F.Supp. 990; State v. Ernest, 209 Minn. 586, 297 N.W. 24, 134 A.L.R. 643; Mueller v. Commissioner, 307 Mass. 270, 30 N.E.2d 217; Clements v. Hughes, 375 Ill. 170, 30 N.E.2d 643; State ex rel. Bouthillier v. Farrell, 178 Or. 353, 166 P.2d 812, 167 P.2d 698; State v. Kimbrough, 241 Ala. 535, 3 So.2d 424; and cf. Bender v. Conner, D.C., 28 F. Supp. 903. Because the question was not raised below or briefed by counsel, we have not considered this contention of plaintiff. 16 C.J.S., Constitutional Law, § 96 b, p. 339; 4 C.J.S., Appeal and Error, § 240, p. 461.

The judgment of the trial court is affirmed.

All the Judges concur.