## GARDNER v. WELCH, et al.

Rev. Civ. Code, § 1239, provides that the execution of a contract in writing supersedes all oral negotiations as to matters which preceded or accompanied the execution of the instrument. Negotiations between plaintiff and defendant resulted in plaintiff turning over be conveyed to plaintiff's son, subject to a mortgage, which under the be conveyed to plaintiff's son, subect to a mortgage, which under the deed the grantee assumed, and defendant and plaintiff executed a written agreement which recited that defendant assumed control of the land, that he agreed to pay interest on the mortgage on the land, and guarantied plaintiff a certain sum, within 5 years, plaintiff to pay taxes and furnish a deed when requested by defendant on payment of the sum mentioned, defendant to be entitled to any excess over such sum and the mortgage. Defendant failed to pay the interest, and the mortgage was foreclosed, and plaintiff sued to recover the sum in question. Held that, under the written contract, plaintiff owned the land, and defendant warranted a sale for the sum in question, and it was proper to exclude parol evidence of conversations tending to show that the land was conveyed to plaintiff's son as security.

Plaintiff, having had actual knowledge that defendant was not paying the interest as agreed, and having neglected to pay the interest himself, was only entitled to recover the sums of interest which defendant neglected to pay, with interest on such sums at the legal rate, when each should have been paid, and could not recover on the guaranty.

(Opinion filed, December 19, 1906.)

Appeal from Circuit Court, Douglas County. Hon. E. G. SMITH, Judge.

Action by M. D. Gardner against Irving R. Welch and another, doing business under the name of the Charles Mix County Land Company. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

*W. E. Tipton* and *C. H. Dillon*, for appellant. *French* & *Orvis*, for respondents.

HANEY, J. The allegations of the complaint are in substance as follows: That defendants were and are partners, doing business under the firm name of the "Charles Mix County Land Company." That plaintiff was the owner of certain merchandise of the value of $1,100. That defendants were the owners of a certain quarter section of land, title to which was in one A. H. Pease, for their own use and benefit, upon which there was a mortgage for $600, falling due May 4, 1899, with interest payable annually. "That on the 10th day of May, 1894, the defendants purchased of the plaintiff the said stock of merchandise, and the plaintiff sold and delivered said merchandise to the defendants at the agreed price of $1,100, to be paid on or before five years from date of sale at 8 per cent interest. That the defendants, for and in consideration of receiving said $1,100 stock of merchandise so delivered to them, then and there agreed to guaranty to the plaintiff by their written guaranty the payment of the said $1,100, with 8 per cent interest, on or before five years from said date and to cause to be deeded to Asa Gardner, plaintiff's son, said real estate, which was then and there to be held by said Asa Gardner for the protection of plaintiff and defendants, and as security for the payment to plaintiff of said $1,100, with interest thereon, and the plaintiff and defendants, in order to carry out said agreement and understanding, did then and there, make, execute, and deliver their certain written contract in the words and figures following, viz: 'It is this day agreed between the Charles Mix County Land Co. of Edgerton, South Dakota, and M. D. Gardner, of Bon Homme, Bon Homme County, South Dakota, as follows: The Charles Mix County Land Co. this day takes charge of and assumes control of the S. E. ¼, Sec. 23, Twp. 100, R. 67, title of which is in Asa Gardner, and agrees to pay interest as it matures on present loan of $600, now on land, and guarantees Gardner $1,100 principal and eight per cent interest within five years from this date, the said company to have all rentals and full use of said land, Gardner is to pay taxes as they become due, and to furnish good deed at any time requested by said com-

pany, on payment of the $1,100 and interest aforesaid with matured interest from this date to date of tender. The said Land Co. is to have any excess received from said land above the $600 encumbrance and $1,100 with interest at eight per cent. This agreement may be canceled at any time, by mutual consent but is not transferable. Gardner has privilege of disposing of land himself at any time on payment of a reasonable sum for this guaranty. Dated at Bon Homme, So. Dak., this 10th day of May, 1894. Charles Mix County Land Co., By Irving H. Welch. M. D. Gardner.' " That pursuant to this contract defendants caused said land to be conveyed to said Asa Gardner, and then took possession of the same and have since had full control and use thereof, and have received its rents and profits. That defendants neglected, failed, and refused to pay the interest on the aforesaid mortgage, which fell due May 4th, 1895, May 4th, 1896, and May 4th, 1897. That the mortgagee named therein foreclosed the same on account of default in non-payment of interest, caused the land to be sold, and acquired title to the same, July 13, 1898. That from the making of the aforesaid contract until the mortgagee acquired title to the land the plaintiff was able and willing to convey the same to the defendants whenever requested, upon payment of $1,100, with interest at eight per cent. That more than five years have elapsed since the making of said contract, and defendants have neglected, failed, and refused to pay for said merchandise or to pay any part of said $1,100, and have not at any time demanded a conveyance of the land. That since the expiration of said five years plaintiff has repeatedly demanded of defendants the payment of said $1,100, with interest at 8 per cent. per annum, but defendants have failed and refused to pay any part thereof. Wherefore plaintiff demands judgment for $1,100, with interest at 8 per cent. per annum from May 10, 1894, and costs. The answer, in effect, admits the partnership; the plaintiff's ownership of the merchandise; defendant's ownership or control of the land; the execution of the contract; that defendants rented the land for one or two years, receiving the rent therefor; that defendants have paid no part of the $1,100; that the land was mortgaged for $600; that defendants never paid any interest

on the mortgage; and that the mortgage was foreclosed and deed issued to the purchaser. All other allegations of the complaint are denied, and it is alleged "that it was agreed between plaintiff and the defendants that said conveyance of said land should be accepted by plaintiff in full payment for said stock of merchandise."

The learned circuit court found, inter alia: That on April 25, 1894, the parties entered into a contract, whereby it was agreed, in effect, that defendants would convey to the plaintiff, or such person as he should designate, by good and sufficient deed, the land described in the complaint, free from all liens or incumbrances, except a mortgage for $600, due on or before five years, and that plaintiff would sell and deliver to defendant $1,100 worth of merchandise. "That thereafter, and prior to the 10th day of May, 1894, the plaintiff saw the defendant John W. Harding and told him that he would not carry out said contract." That thereafter, and on the 10th day of May, 1894, the defendant Irving H. Welch went to the residence of the plaintiff, where the stock of merchandise referred to in said contract was kept, taking with him a person competent to invoice said merchandise, and a warranty deed for the land above described, executed by Addison H. Pease and wife, to Asa Gardner, a son of the plaintiff. That said deed contained a covenant as follows: "And the said Addison H. Pease and Carrie Pease, for themselves and their heirs, executors, and administrators, do covenant and agree to and with the said party of the second part, his heirs and assigns, that they are well seized in fee of the land and premises aforesaid * * * and that the same are free from all incumbrances whatsoever, except a mortgage of $600 in favor of the Iowa Land Company, Ltd., of Sibley, Ia., due on or before five years from date, with interest at 10 per cent., which mortgage party of the second part assumes and agrees to pay as part of purchase price hereof." That said deed was dated May 3, 1894, and the name of Asa Gardner was inserted therein at plaintiff's request. "That at said time goods from said stock of merchandise were invoiced and selected of the value of $1,100, but the plaintiff, M. D. Gardner, refused to carry out said written contract, and expressed a doubt as to his being able to realize $1,-100 net from said land. That thereupon, and before any of said

goods were removed or invoiced and before he had accepted said deed, the defendant Irving H. Welch, for himself and his co-defendant, John W. Harding, entered into" the written contract set out in the complaint. That on December 28, 1895, the plaintiff wrote to the mortgagee, inquiring if the interest on the mortgage had been paid, stating: "I bought the land of the Charles Mix Land Co., and they agreed to keep the Int. paid on it for the use of the land." That on February 22, 1896, the plaintiff wrote and sent defendant Welch a postal card, on which he said: "I have just written Mr. Rae of Marcus that I had a ¼ Sec. of land in your county for sale or trade and if he is inclined to deal for it he will most likely write you, I have been thinking it might be better for us both to get rid of that land. I am informed that the interest has not been paid and with the uncertainty of crops and the hard times generally it would be better to dispose of it." That subsequently the plaintiff wrote several letters to the defendant, urging them to pay the interest on the mortgage. That about July 10, 1897, the mortgage was foreclosed by advertisement and a sheriff's deed was issued to the mortgagee July 13, 1898. That the notice of sale stated the default to be non-payment of interest, but made no reference to any default in the payment of taxes; and concluded that the plaintiff was entitled to recover for the amount of interest which accrued on the mortgage from its date to the date of the sheriff's deed, with interest at 7 per cent. on each installment of interest from the time it became due, and entered judgment accordingly. The plaintiff appealed from such judgment and from an order denying his motion for a new trial.

It is contended the court erred in refusing to make the following findings of fact requested by the plaintiff: "(1) That the deed made by Pease and wife to Asa Gardner was taken in the name of Asa Gardner as security for the payment to plaintiff of $1,100, the value of the merchandise. (2) The title of said real property was taken in the name of Asa Gardner and was to be held by him as trustee for the plaintiff and defendants." And in excluding conversations contemporary with the execution of the written contract. The learned circuit court could not have granted both requests. because they are not consistent. Nor did it err in refusing either of them. The

doctrine that oral evidence is admissible to prove that a conveyance, absolute in form, was in fact a mortgage, is entirely foreign to this controversy. No such issue is presented by the pleadings. On the contrary, it is alleged in the complaint that the written contract was made to carry out the agreement and understanding of the parties. There are no allegations of fraud or mistake; no suggestion that the writing should be reformed. The action is one founded upon an express written contract. True, the complaint contains certain conclusions of the pleader, concerning the construction of the contract, but its allegations are not sufficient to support the conclusion that the conveyance was in fact a mortgage, and the uncontradicted facts render such conclusion untenable. Conveyances absolute in form are held to be mortgages when it is shown that such was the intention of the parties. The true nature of the transaction, the contract of the parties, may be shown by parol, provided they have not expressed their understanding in writing; but "the execution of a contract in writing, whether the laws requires it to be written or not, supersedes all the oral negotiations or stipulations concerning the matter, which preceded or accompanied the execution of the instrument." Rev. Civ. Code, § 1239. So, in the case at bar, when the deed to Asa Gardner was delivered, the understanding of the parties regarding the title to the land, the title to the merchandise, the payment of interest on the mortgage, the payment of taxes, the use and disposal of the land, and defendant's guaranty, the contract, was reduced to writing, and parol testimony was not admissible to contradict or vary the terms of such writing. Undoubtedly a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as security for a loan of money. As the equity upon which the court acts upon such cases arises from the real character of the transaction, any evidence, written or oral, tending to show this, is admissible. Peugh v. Davis, 96 U. S. 336. But this exception to the general rule excluding parol testimony to contradict or vary the terms of a written instrument applies only to the deed, and when the evidence discloses, as it does in this case, that the character of the transaction, the understanding and intention of the parties, has been expressed in an executed written contract, then

the rule, and not the exception, must be recognized. To illustrate: A. delivers to B. a deed absolute in form. Contemporaneously A. and B. execute a written contract wherein it is agreed that title to the land conveyed shall be held as security for the payment of $500 due from A. to B. The written contract would be admissible to show that the deed was in fact a mortgage, but no one would contend that parol testimony would be admissible to prove that title to the land was held for any other purpose than that specified in the written contract. Therefore no admissible evidence was excluded, and the rights of the parties must depend on the construction to be given the written contract.

Viewed in the light of the circumstances attending the execution of this contract, there is no uncertainty as to its terms. Title to the land was to be in Asa Gardner for the use and benefit of the plaintiff. Title to the merchandise was to be in the defendants. Plaintiff was to pay taxes on the land. Defendants were to act as agents of the plaintiff in selling the land, have the use of it, pay interest on the mortgage, and they warranted a sale within five years for $1,100, with 8 per cent. interest in excess of the mortgage. So far as this appeal is concerned, the situation may be stated thus: Plaintiff owned the land incumbered to the amount of $600. He promised to pay taxes. Defendants promised to pay interest on the mortgage, and warranted a sale for the sum stated within five years. Plaintiff failed to pay taxes, defendants failed to pay interest, and the land was lost. Such being the facts, what are the rights of the parties? Generally the measure of damages for the breach of an obligation arising from contract, no bad motives being involved, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. Rev. Civ. Code, § 2293. This does not conflict with the universally recognized doctrine that compensation cannot be given for detriment which the injured party should have prevented. That doctrine is thus stated by Mr. Sutherland: "The law imposes upon a party injured from another's breach of contract or tort the active duty of making reasonable exertion to render the injury as light as possible. If, by his negligence or willfulness, he allows

the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him. This is a practical duty under a great variety of circumstances, and as the damages which are suffered by a failure to perform it are not recoverable, it is a duty of great importance." 1 Sutherland, 148. Evidently neither party to this contract anticipated the loss of the land through the foreclosure of the mortgage. Each expressly promised to protect it; the one by paying taxes, the other by paying interest. Each was interested in having it protected. No bad motive can be imputed to either. The plaintiff had actual knowledge that the interest was not being paid by the defendants. If he had paid it, he would have been entitled to recover the sum so expended, with interest. We think it was his duty to do so, and that, having neglected this duty, having failed to prevent the foreclosure of the mortgage, he should not receive compensation for the loss thus occasioned. Where plaintiff's leased a lot to the defendant, who agreed to pay the taxes thereon for the use of the same, and neglected so to do, whereupon the property was sold for taxes, and plaintiff's lost title thereto, it was held that the proper measure of the plaintiff's damage was the amount of the taxes unpaid, together with interest thereon, and not the value of the lot, for the reason that the loss of the lot was not the proximate and natural result of the tenant's failure to pay taxes. Fountain v. Lumber Co., 18 S. W. 1147. So, in the case at bar, if there had been only a promise to pay interest, the plaintiff would not have been entitled to recover more than the sums of interest which defendants neglected to pay, with interest on such sums at the legal rate from the date when each should have been paid, and he cannot recover on the guaranty because of his own failure to protect the property.

The judgment of the circuit court is affirmed.

CORSON, J., not sitting.